UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Henry L. Jackson,

Plaintiff,

vs.                                                   REPORT AND RECOMMENDATION

The Federal Bureau of Prisons,
Warden Marty C. Anderson in
his official and personal capacities,
John/Jane Does, Mr. Herold, FMC
Pharmacist, in his official and
personal capacities, and the Mayo
Clinic,[1]

Defendants.          Civ. No. 06-1347 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

---

[1]The Defendant Mayo Clinic notes that the "Mayo Clinic" should have been properly identified as the "Mayo Clinic Rochester," since the Mayo Clinic Rochester is the party which had contracted with the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester"), to provide the services at issue in the Plaintiff's Complaint.  See, Mayo Clinic's Motion to Dismiss, Docket No. 12, at p. 1 n.1.  We benignly overlook that error, as Mayo Clinic Rochester does not predicate its Motion to Dismiss on that ground, and the error does not go to the substance of the Plaintiff's claims.

U.S.C. §636(b)(1)(B), upon the Motion of the Defendants Federal Bureau of Prisons ("BOP"), Warden Marty C. Anderson ("Anderson"), Douglas Herold ("Herold"), and John/Jane Doe ("Doe Defendants")(collectively, "Federal Defendants"), to Dismiss under Rules 12(b)(1), and 12(b)(6), Federal Rules of Civil Procedure; and upon the Motion of the Defendant Mayo Clinic Rochester ("Mayo Clinic") to Dismiss, on the same grounds, Count III of the Plaintiff's Complaint.  For these purposes, the Plaintiff appears pro se, the Federal Defendants appear by Friedrich A.P. Siekert, Assistant United States Attorney, and the Mayo Clinic appears by William R. Stoeri, Esq.  For reasons which follow, we recommend that the Defendants' Motions to Dismiss should be granted.

## II.  Factual and Procedural Background

On April 7, 2006, the Plaintiff, a Federal prisoner, commenced this action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and Title 42 U.S.C. §1983, alleging violations of his Federal constitutional rights, and bringing additional claims under the Federal Tort Claims Act ("FTCA"), the Uniform Federal Accessibility Standards ("UFAS"), the Americans with Disabilities Act ("ADA"), the Architectural Barriers Act ("ABA"), and the Tucker Act, Title 28 U.S.C. §1491.  See, Complaint, Docket No. 1.  At the time that he filed his Complaint, the Plaintiff was

a Federal Prisoner at the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester"), although he has since been transferred to the Federal Medical Center, in Devens, Massachusetts.  See, <u>Federal Defendants' Memorandum of Law in Support</u>, <u>Docket No. 25-1</u>, at p. 2.

All of the parties, who are named in the Plaintiff's Complaint, were associated with his incarceration at FMC-Rochester.  The BOP is the Federal agency charged with the administration of FMC-Rochester, and Anderson has been the Warden at FMC-Rochester since July 10, 2005, replacing previous Warden W.I. LeBlanc, Jr. ("LeBlanc").  Herold is a pharmacist, who is employed by the United States Public Health Service, and who has worked for the BOP at FMC-Rochester since September of 1991.  The identity of the Doe Defendants has not been pled but, as the Plaintiff asserts, "will arise with respect to certain claims that only discovery can identify the correct defendant with respect to the pharmacy staff, the Utilization Review Committee and other departments within the FMC prison structure."  <u>Complaint</u>, p. 3, ¶5.  The Mayo Clinic is a private medical practice which contracts its services to FMC-Rochester.  See, <u>Mayo Clinic's Memorandum of Law in Support</u>, <u>Docket No. 14</u>, at p. 2.

The bases for the Plaintiff's claim began on his admission to FMC-Rochester, in August of 2001.  The Plaintiff alleges that, prior to his admission, he was disabled due to a traffic accident in 1998, as he suffers from paralysis in his legs, has plates and rods in his spine, has a superpubic catheter in his pelvis, and has degenerating muscle damage in his shoulders, wrists, and hands, all of which leave him in constant pain, and dependent on a wheelchair.  <u>Id.</u> at p. 4, ¶¶14-15.  When the Plaintiff was admitted for detention at FMC-Rochester, prison officials allowed him to bring his personal mechanical wheelchair into the facility, but denied his request to also bring in a personal electric wheelchair.  <u>Id.</u> at p. 4, ¶¶12-13.

The Plaintiff alleges that, on September 18, 2003, he was showering in a bathroom at FMC-Rochester which, he claims, was not wheelchair accessible, when the bench that he was sitting on gave way, resulting in the fracture of his right leg.  <u>Id.</u> at p. 6, ¶31.  According to his Complaint, the Plaintiff broke his left leg while showering in the same stall on July 27, 2004, after he unsuccessfully attempted to transfer himself from a bench to his mechanical wheelchair.  <u>Id.</u> at p. 6, ¶34.  As a result, the Plaintiff was placed in a full left leg cast.  <u>Id.</u> at p. 7, ¶36.  The Plaintiff claims that he complained about severe pain, underneath his cast, to physicians from the Mayo Clinic, but was forced to wait three (3) weeks, after voicing his complaints,

before the cast was removed, revealing a massive ulceration on that leg which required skin grafts.  Id. at p. 7, ¶¶38-40.  While the Plaintiff's left leg was still in a cast, a leg support on a mechanical wheelchair malfunctioned, assertedly causing the Plaintiff's cast to strike the floor rebreaking his left leg.  The leg support was allegedly provided by FMC-Rochester.  Id. at p. 7-8, ¶¶44-46.

The Plaintiff further claims that he has been denied pain medications that were prescribed to him by his physicians.  Specifically, he alleges that, on July 6, 2005, July 7, 2005, and July 8, 2005, FMC-Rochester pharmacy staff refused to dispense prescribed slow-release morphine ("s/r morphine")[2] to him, and that, on July 15, 2005, the pharmacy staff replaced his morphine with non-prescribed methadone.[3]  Id. at p. 8, ¶¶50-52.  Finally, the Plaintiff alleges that he has been discriminated against, and subjected to daily hardships, by facilities at FMC-Rochester that do not accommodate his disabilities, and that prevent him from accessing the law library, pool hall,

---

[2]Morphine is "the principal and most active narcotic alkaloid of opium * * * having powerful analgesic action and some central stimulant action."  Dorland's Illustrated Medical Dictionary, at 1133 (29th Ed. 2000).

[3]Methadone hydrochloride is "a synthetic narcotic, possessing pharmacologic actions similar to those of morphine and heroin * * * [and] used as an analgesic."  Dorland's Illustrated Medical Dictionary, at 1098 (29th Ed. 2000).

ceramics studio, audio/visual section, and fitness equipment, without assistance. Id. at pp. 9-10, ¶¶60-66.

On December 2, 2004, the Plaintiff filed an administrative claim with FMC-Rochester concerning his inability to obtain an electric wheelchair, after medical reports, in May of 2004, allegedly confirmed his need for such an accommodation. See, Plaintiff's Appendix, Docket No. 2, at Exhibit A-1. On December 10, 2004, LeBlanc responded to the Plaintiff's grievance by notifying him that his request for an electric wheelchair had been denied because x-rays did not reveal deterioration of muscles, or bones in his wrists or shoulders, there was no objective evidence of carpal tunnel syndrome or ulnar nerve compression, and the use of an electric wheelchair had not been recommended by a physical therapist. Id. at Exhibit A-2. The Plaintiff appealed that decision on January 12, 2005, Id. at Exhibit B-1, and his appeal was denied by the BOP's Regional Office on February 3, 2005, id. at Exhibit B-2, and by the BOP's National Office on April 13, 2005. Id. at Exhibit C-2. On September 14, 2005, the Plaintiff also filed an administrative claim which requested an investigation into the failure of LeBlanc to provide him with an electric wheelchair. Id. at Exhibit D-1. The claim was rejected on September 21, 2005, as untimely, since it was not received within twenty (20) days of the event grieved. Id. at Exhibit D-2.

On June 14, 2005, the Plaintiff filed an administrative claim for $500,000.00 in tort damages, under the FTCA, for the leg fracture that he suffered on September 18, 2003. Id. at Exhibit E-2. The claim was denied on September 10, 2005, as an investigation of the Plaintiff's claim revealed no personal injury that resulted from the negligence of any BOP employees who were acting within the scope of their employment. Id. at Exhibit E-1. Subsequently, on September 14, 2005, the Plaintiff filed an administrative request with FMC-Rochester on the same matter, asking for damages of $1,000,000.00, id. at Exhibit F-2, that was denied as untimely on September 21, 2005. Id. at Exhibit F-1.

On June 21, 2005, the Plaintiff filed a second tort claim, under the FTCA, asking for $500,000.00 in damages for the second leg fracture that he allegedly suffered on July 27, 2004, id. at Exhibit G-2, which was denied on September 10, 2005. Id. at Exhibit G-1. The Plaintiff's administrative request on the same matter sought $1,000,000.00 in damages, id. at Exhibit H-2, but was also dismissed as untimely, on September 21, 2005. Id. at Exhibit H-1.

The Plaintiff filed a third tort claim, under the FTCA, on June 28, 2005, asking for $750,000.00 in damages for the third leg fracture that he suffered on October 13, 2004, id. at Exhibit I-2, and that claim was also denied on September 10, 2005. Id.

at Exhibit I-1. The Plaintiff's administrative request on the same matter sought $1,500,000.00 in damages, <u>id.</u> at Exhibit J-2, but was dismissed as untimely on September 21, 2005. <u>Id.</u> at Exhibit J-1.

On July 20, 2005, the Plaintiff filed a fourth tort claim, under the FTCA, asking for $620,000.00 in damages, and alleging that he did not receive his prescribed medications to treat his pain on July 6, 2005, July 7, 2005, July 8, 2005, and July 15, 2005. <u>Id.</u> at Exhibit K-2. On November 30, 2005, that claim was also denied. See, <u>Declaration of Dennis Bitz</u>, <u>Docket No. 26-5</u>, at Exhibit 4, p. 2. The Plaintiff filed an administrative remedy request concerning that matter on July 27, 2005, see, <u>Appendix</u>, supra at Exhibit L-1, in which he asked for the discipline of the FMC-Rochester pharmacy staff, which was denied on August 11, 2005. See, <u>Appendix</u>, supra at Exhibit L-2.

In his response to the Plaintiff's grievance, Anderson explained that FMC-Rochester records revealed that the Plaintiff had received his prescribed doses of morphine on July 6, 2005, July 7, 2005, and July 8, 2005, and that the decision to dispense methadone to the Plaintiff, rather than morphine, on July 15, 2005, had been made by a clinician in response to a concern that s/r morphine was being introduced by patients into the general prison population. <u>Id.</u> Although the Plaintiff renewed his

grievance with the Regional Office on August 25, 2005, id. at Exhibit —1, it was rejected on October 12, 2005, id. at Exhibit —2, and by the National Office on December 14, 2005.  Id. at Exhibit –2.

The Defendants maintain that the Court should dismiss all of the Plaintiff's claims, and argue that the Plaintiff's Bivens/Section 1983 claims are barred by the failure of the Plaintiff to exhaust his administrative remedies, the doctrine of sovereign immunity, and the doctrine of qualified immunity.  The Defendants further allege that the Plaintiff's FTCA claims should be dismissed, since the Plaintiff failed to exhaust his administrative remedies, and sovereign immunity also bars those claims.  As to the claims under the ADA, ABA, and UFAS, the Defendants claim that the Plaintiff has failed to exhaust his administrative remedies under the ADA, and that the ABA and UFAS do not provide separate causes of action.  Finally, the Defendants contend that the Plaintiff's Tucker Act claims should be dismissed because the damages alleged are in excess of the statutory limit, and the Court lacks jurisdiction to hear Tucker Act claims against parties who are not in privity of contract with the United States.

Discussion

A.   <u>The Defendants' Motions to Dismiss</u>.

1.   <u>Standard of Review</u>.  A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived.  See, <u>Moubry v. Independent School District No. 696</u>, 951 F. Supp. 867, 882 (D. Minn. 1996), citing <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77, 95 (1981); <u>Bueford v. Resolution Trust Corp.</u>, 991 F.2d 481, 485 (8th Cir. 1993) ("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court <u>sua sponte</u>.").  "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments."  <u>Moubry v. Independent School Dist. No. 696</u>, supra at 882, citing <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss."  <u>Carlson</u>

Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof," "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). Here, the Defendants have submitted Affidavits, which go to the

jurisdiction of this Court to hear the Plaintiff's claims, and the Plaintiff has failed to submit any rebuttal to those attestations.[4]

As to Rule 12(b)(6), Federal Rules of Civil Procedure, "[i]n ruling on a motion to dismiss a complaint for failure to state a claim on which relief can be granted, a court must accept the complaint's factual allegations as true and construe them in a light most favorable to the plaintiff." Doe v. Cassel, 403 F.3d 986, 987 (8th Cir. 2005), citing Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking Companies, Inc., 140 F.3d

---

[4]By letter dated September 18, 2006, the Plaintiff advised that he would not be submitting any materials without the aid of counsel. See, Docket No. 32. Construing his letter as a request for an appointed legal counsel, we recommend that the Motion be denied. The issues presented in this case are not complicated, as the facts are straightforward, and the legal issues are not novel. The Plaintiff's Complaint was forthright in its meaning, and his arguments were readily understood. Even absent the logistical difficulties of attempting to appoint, or to recruit, legal counsel to represent the Plaintiff in a far off District, the Plaintiff has demonstrated his abilities to represent himself. If he were in need of an enlargement of time to present his arguments and materials, he has not made that request to date.

797, 799 (8th Cir. 1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v.</u>

<u>Independent School Dist. No. 361</u>, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which

are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>,

supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid

dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale</u>

<u>Sch. Dist.,</u> 133 F.3d 649, 651 (8th Cir. 1998).[5]

2.    <u>Legal Analysis.</u>

───────────────

[5]A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." <u>Rule 12(b), Federal Rules of Civil Procedure</u>. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, <u>Enervations, Inc. v. Minnesota Mining and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004); <u>Stahl v. United States Department of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003). Here, the Mayo Clinic has proffered the contract, which extends between the Clinic, and the United States, concerning the provision of medical services at FMC-Rochester, which is referenced in the Plaintiff's Complaint. Our consideration of that document does not transform the Mayo Clinic's Motion to Dismiss into a Motion for Summary Judgment under either Rule 12(b)(1), or 12(b)(6), Federal Rules of Civil Procedure.

a.    The Plaintiff's Bivens Claims.  The Defendants seek dismissal of the Plaintiff's Bivens claims on the following grounds:  1) the failure of the Plaintiff to exhaust his administrative remedies;  2) the doctrine of sovereign immunity; and 3) the doctrine of qualified immunity.[6]   Our discussion commences with the Defendants' assertion that the Plaintiff has failed to exhaust his administrative remedies.

1)    Failure to Exhaust Administrative Remedies.    In Jones v. Bock, --- U.S. ---, 127 S.Ct. 910, 914-15 (2007), the Supreme Court recently considered the role that a prisoner's failure to exhaust his administrative remedies should play in the context of deciding a Motion to Dismiss a Bivens claim.  The Court began its analysis by noting that requiring prisoners to exhaust their administrative

---

[6]In the caption of his Complaint, the Plaintiff cited "42 USC §1983 'Bivens'" as one cause of action.  See, Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  Bivens provides a cause of action for the constitutional violations of Federal officers, while Title 42 U.S.C. §1983 provides a parallel cause of action against State and local officers.  See, Johnson v. Fankell, 520 U.S. 911, 914-15 (1997); Farmer v. Brennan, 511 U.S. 825, 839 (1994); Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999)("An action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials."), quoting Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990). The Defendants in this case are all Federal officers, and therefore, we recommend that the Plaintiff's Section 1983 claims be dismissed with prejudice.

remedies had the positive effect of allowing prison officials "an opportunity to resolve

disputes concerning the exercise of their responsibilities before being haled into court"

which, in turn, "has the potential to reduce the number of inmate suits, and also to

improve the quality of suits that are filed by producing a useful administrative record."

Id., citing Woodford v. Ngo, 548 U.S. ---, 126 S.Ct. 2378, 2385, 2388 n.4 (2006).

Those purposes served as the backdrop to the Court's consideration of the

exhaustion requirement, which Congress included in the Prison Litigation Reform Act

("PLRA"), and which provides as follows:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

Title 42 U.S.C. §1997e(a).

The Court first considered whether exhaustion, which is "mandatory under the

PLRA," is a pleading requirement that must be satisfied by the prisoner in his

Complaint, or if it must be pled and proved by the defendant. See, Jones v. Bock,

supra at 919. After noting that the drafters of the PLRA failed to impose a stringent

pleading requirement on prisoners, the Court concluded that the "failure to exhaust is

an affirmative defense under the PLRA, and that inmates are not required to

specifically plead or demonstrate exhaustion in their complaints." Id. at 921.

- 15 -

The Court concluded by considering "mixed claims," in which a prisoner has failed to exhaust some, but not all, of the claims asserted in his Complaint. In general, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad," id. at 924, and the Court distinguished the exception to this general rule -- the total exhaustion requirement in habeas corpus -- because of the implication that habeas relief has on principles of comity and federalism. Id. The Court determined that the language in Section 1997e(a) of PLRA, which provides that "[n]o action shall be brought" unless administrative procedures are exhausted, allowed Courts to follow the typical claim-by-claim approach, and precluded blanket dismissal of a prisoner complaint that contained both exhausted and unexhausted claims. Id. at 926.

In this context, FMC-Rochester, like other Federal prisons, follows the sequential grievance system enunciated in Title 28 C.F.R. §§542.10, through 542.19. Under that framework, when a prisoner brings a complaint, he is first required to "present [the] issue of concern informally to staff," who "attempt to informally resolve the issue." 28 C.F.R. §542.13(a). If the inmate is not satisfied with that informal resolution, he may then file a Request for Administrative Remedy with the Warden. See, 28 C.F.R. §542.14(a). "The deadline for completion of informal resolution and

submission of a formal written Administrative Remedy Request, on the appropriate form * * * is 20 calendar days following the date on which the basis for the Request occurred." Id.

To appeal a Warden's decision, an inmate must file an appeal with the Regional Director, "within 20 calendar days of the date the Warden signed the response." 28 C.F.R. §542.15(a). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal" to the General or Central Office "within 30 calendar days of the date the Regional Director signed the response," which constitutes "the final administrative appeal." Id. Therefore, in order to have exhausted the administrative grievance procedure, an inmate must have followed the sequential process through to a determination by the General or Central Office.

In his Complaint, the Plaintiff represents that he has exhausted all three (3) steps of the administrative grievance procedure for each of his Bivens claims.[7] The

---

[7]Count Three of the Plaintiff's Complaint is alleged against the BOP, the Mayo Clinic, and the Doe Defendants. A prisoner cannot bring a Bivens claim against a private entity, see, Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001); Sinclair v. Hawke, 314 F.3d 934, 940 (8th Cir. 2003)(no Bivens claims against private government contractors), and his claims do not relate to prison conditions, so consequently, the exhaustion doctrine does not apply to the Plaintiff's claims against the Mayo Clinic. To the extent that the Plaintiff alleges any Bivens liability against the BOP, and the Doe Defendants, he has submitted no evidence that he filed any administrative claims regarding their involvement in the Mayo Clinic's allegedly

Defendants challenge that representation, and assert that the Plaintiff failed to exhaust his administrative remedies with respect to his three (3) separate claims for leg fractures, which took place on September 18, 2003, July 27, 2004, and October 13, 2004, as well as his request for an investigation into the failure of LeBlanc to provide him with an electric wheelchair, after his initial transfer to FMC-Rochester. As a result, the Defendants contend that the Plaintiff has not exhausted his administrative remedies with respect to those issues, as raised in his Complaint, and that those claims should be dismissed.

We agree. The Plaintiff has failed to exhaust his administrative remedies for his three (3) broken leg claims, as well as for his request for an investigation into the failure of LeBlanc to provide him with an electric wheelchair upon his admission at

---

negligent medical treatment of his leg. Consequently, we recommend that any Bivens claims, which relate to Count Three of the Plaintiff's Complaint, be dismissed as to all of the Defendants.

Count Five of the Plaintiff's Complaint alleges violations of the ADA, ABA, and UFAS. Bivens actions are precluded if "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." Sinclair v. Hawke, 314 F.3d 934, 940 (8th Cir. 2003), quoting Schweiker v. Chilickly, 487 U.S. 412, 423 (1988). Thus, to the extent that the Plaintiff brings any claims relating to ADA, ABA, or UFAS, under Bivens, those claims should also be dismissed with prejudice.

FMC-Rochester.  Title 42 U.S.C. §1997e(a) expressly requires that prisoner litigants must exhaust all of their available administrative remedies before seeking relief in Federal Court.  See, Booth v. Churner, 532 U.S. 731, 741 (2001)("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures");  Porter v. Nussle, 534 U.S. 516, 532 (2002) (The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.").

Here, the Plaintiff has pled that he has exhausted all of his administrative remedies, see, Complaint, supra at p. 4, ¶¶10-11, and, as required by the Supreme Court's recent decision in Jones v. Bock, supra, the Federal Defendants raised the Plaintiff's failure to exhaust his administrative remedies, as an affirmative defense, in the context of their Motion to Dismiss.  See, Memorandum in Support, supra at p. 13.  Based upon copies of the administrative record, as submitted by the Plaintiff, we find that the Plaintiff's three (3) claims relating to leg fractures were correctly dismissed by the BOP as untimely, and so were not exhausted.  Each of the Plaintiff's claims was filed on September 14, 2005, and was attempting to grieve events that occurred "in 2003-2004" -- specifically, occurrences on September 18, 2003, July 27, 2004, and October 13, 2004.  Each of those claims was rejected as untimely, since

they were filed well in excess of the twenty (20) day time limit on administrative

remedies. Similarly, the Plaintiff's request for an investigation into LeBlanc's failure

to provide him with an electric wheelchair was rejected as untimely, when it was filed

on September 14, 2005, since the original denial of a wheelchair occurred on the

Plaintiff's admission to FMC-Rochester in August of 2001, and the Plaintiff received

an electric wheelchair in July of 2005.

Accordingly, we find that the Plaintiff has failed to state a cause of action on

which relief can be granted for those claims, and recommend that they be summarily

dismissed, without prejudice, because of his failure to exhaust his administrative

remedies. As admitted by the Defendants, the Plaintiff has properly exhausted his

administrative remedies with respect to his other claims, namely, the denial of an

electric wheelchair after medical reports in May of 2004, assertedly confirmed his need

for such an accommodation, and his claims relating to the Defendants' failure to

dispense prescribed medication on July 6 through 8, 2005, and July 15, 2005.

Accordingly, we proceed to the merits of the Plaintiff's Complaint on those claims.[8]

---

[8]In his Complaint, the Plaintiff invokes the futility doctrine "that excuses the
administrative remedy process for certain policies of the BOP as an agency." Docket
No. 1, at p. 4, ¶11. "Courts recognize only three exceptions to the exhaustion
requirement, including futility, inability of the administrative remedies to provide
adequate relief, and the establishment of an agency policy or practice of general

2)    <u>Sovereign Immunity</u>.  As a sovereign power, the United States may be sued only to the extent that it has consented to suit by Statute. See, <u>United States Dept. of Energy v. Ohio</u>, 503 U.S. 607, 615 (1992); <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" <u>Brown v. United States</u>, 151 F.3d 800, 803 (8th Cir. 1998), quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); see also, <u>United States v. Mottaz</u>, 476 U.S. 834, 841 (1986)("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."), citing <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).

---

applicability that is contrary to law." <u>Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.</u>, 198 F.3d 648, 656 (8th Cir. 1999), citing <u>Urban by Urban v. Jefferson Co. Sch. Dist. R-1</u>, 89 F.3d 720, 724 (10th Cir. 1996).  "An administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." <u>Ace Prop. & Cas. Insur. Co. v. Federal Crop Ins.</u>, 440 F.3d 992, 1000 (8th Cir. 2006), citing <u>McCarthy v. Madigan</u>, 503 U.S. 140, 147 (1992).  Here, the Plaintiff has not pled any reason that an administrative appeal would have been futile or inadequate, or that he was denied access to the appeal process.  Further, he has not alleged an unconstitutional BOP policy which would render an administrative appeal useless. The Plaintiff successfully exhausted several of his claims, and does not claim that he had any difficulty in doing so.  Consequently, we find that the Plaintiff's failure to exhaust all of his claims is not excused as a futile act, and that the dismissal of his unexhausted claims, without prejudice, is appropriate.

Waivers of sovereign immunity must be strictly construed in favor of the sovereign, and may not be enlarged beyond what the language of the waiver requires. See, United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); see also, Bowen v. City of New York, 476 U.S. 467, 479 (1986); Block v. North Dakota, 461 U.S. 273, 287 (1983).  Thus, the doctrine of sovereign immunity holds that the United States, and its agencies and instrumentalities -- including the BOP -- are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991); United States v. Dalm, 494 U.S. 596, 608 (1990); United States v. Mitchell, supra at 538; Kaffenberger v. United States, 314 F.3d 944, 950 (8th Cir. 2003).

Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution.  See, Bivens v. Six Unknown Named Agents, supra at 410; Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)("It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.").  A Federal prisoner in a BOP facility may bring a Bivens claim against an individual officer, subject to the defense of qualified immunity, but "the prisoner may not bring a Bivens claim against the officer's employer, the United States, or the

- 22 -

BOP * * * with respect to the alleged constitutional deprivation, his only remedy lies against the individual." Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also, Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).

Here, the Plaintiff's Bivens claims against the BOP are barred by sovereign immunity. Further, to the extent that the Plaintiff sues the individual Federal Defendants in their official capacities, the United States is the real party in interest, and sovereign immunity bars those claims. See, Kentucky v. Graham, 473 U.S. 159, 166 (1985)(suits against public officials acting in their official capacities should be treated as suits against the public entity); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)("A suit against a public officer in his official capacity is actually a suit against the entity for which the official is an agent."). Therefore, the Plaintiff's Bivens claims against the BOP, and the individual Federal Defendants in their official capacities, should be dismissed for lack of subject matter jurisdiction, leaving only the individual capacity claims against Anderson and Herold.[9]

---

[9]The Bivens claims against the Doe Defendants should also be dismissed, as they were not sued in their individual capacities or, alternatively, because the Plaintiff failed to allege their specific involvement in any of the alleged constitutional violations. "An action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37-38 (8th Cir. 1995)(denying Motion to Dismiss various Doe

The Federal Defendants argue that Herold, who is named only for his alleged failure to dispense prescription medications to the Plaintiff, is protected against liability in his individual capacity by the absolute, statutory immunity, which is granted to employees of the United States Public Heath Service ("PHS") by Title 42 U.S.C. §233(a).[10] Pursuant to Section 233(a), "commissioned officers and employees of the PHS are immune from individual liability for <u>Bivens</u> or constitutional torts,

---

defendants where plaintiff alleged specific acts that established cause of action, and dismissing "various other John Does to be named when identified."), citing <u>Munz v. Parr</u>, 758 F.2d 1254 (8th Cir. 1985).  In this case, the Plaintiff's <u>Bivens</u> claims against the Doe Defendants should be dismissed for failure to state a claim, because the Plaintiff failed to allege that they were personally involved in any of the alleged acts. See, <u>Estate of Rosenberg by Rosenberg v. Crandell</u>, supra at 37-38; see also, <u>Phelps v. United States</u>, 15 F.3d 735, 739 (8th Cir. 1994).

[10] Section 233(a) provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

- 24 -

provided that the claim is for damages for personal injuries resulting from the performance of medical, surgical, dental or related functions." Novak v. Mundt, 2005 WL 1277834 at *6 (D. Minn., May 10, 2005), citing Carlson v. Green, 446 U.S. 14, 20 (1980); see also, Lather v. Beadle County, 879 F.2d 365, 367 n. 4 (8th Cir. 1989); West v. United States, 592 F.2d 487, 489 (8th Cir. 1979).  Herold has averred, under penalty of perjury, that at all times relevant to the Plaintiff's Complaint, he was employed as a pharmacist by the PHS, and the Plaintiff has offered nothing to contest that attestation.  See, Declaration of Herold, Docket No. 28, at p. 1, ¶1.  As a consequence, Herold is entitled to absolute immunity, and all of the Bivens claims against Herold, in his individual capacity, should be dismissed with prejudice.

3)     The Plaintiff's Constitutional Claims.  When qualified immunity is asserted in a Bivens action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *."  Jones v. Shields, 207 F.3d 491, 494 (8th Cir. 2000), quoting Wilson v. Layne, 526 U.S. 603 (1999) [citations omitted].  "Only then do we ask whether that right was clearly established at the time of the alleged violation."  Id.; see, Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).  Here, we find no constitutional violation but, nonetheless, we proceed to address the question

- 25 -

of the qualified immunity of Anderson in his individual capacity in the interests of completeness.

> [a]    The Eighth Amendment Claims. It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Albertson v. Norris, 458 F.3d 762, 765 (8th Cir. 2005).  "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'" Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106.   To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005); Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003); Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free

to exercise their independent medical judgment." <u>Dulaney v. Carnahan</u>, supra, citing
<u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996).

"Deliberate indifference may be manifested by prison doctors in responding to
the prisoner's needs or by prison officials in intentionally denying or delaying access
to medical care or intentionally interfering with prescribed treatment." <u>Meloy v.
Bachmeier</u>, 302 F.3d 845, 848 (8th Cir. 2002).  However, "[t]he prisoner must show
more than negligence, more even than gross negligence, and mere disagreement with
treatment decisions does not rise to the level of a constitutional violation." <u>Jolly v.
Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000), quoting <u>Estate of Rosenburg v.
Crandell</u>, supra at 37, see also, <u>Smith v. Clarke</u>, 458 F.3d 720, 724 (8th Cir. 2006);
<u>Roberson v. Bradshaw</u>, 198 F.3d 645, 647 (8th  Cir. 1999)("'Mere negligence or
medical malpractice, however, are insufficient to rise to a constitutional violation.'"),
quoting <u>Dulany v. Carnahan</u>, supra at 1239; <u>DeGidio v. Pung</u>, 920 F.2d 525, 532 (8th
Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a
constitutional claim.").

Although the Plaintiff does not specifically plead a violation of the Eighth
Amendment, he argues that the BOP, Anderson, and the Doe Defendants, "breach[ed]
a duty of trust and duty to provide reasonable medical care," by denying him access

to an electric wheelchair for four (4) years.  Additionally, the Plaintiff claims that he was subjected to "extreme pain with cruel and unusual punishment," when he was denied pain medications that had been prescribed for the Plaintiff by his doctor. Viewing the facts pled in a light most favorable to the Plaintiff, as we must on a Motion to Dismiss, we still are unable to find any violation of the Plaintiff's Eighth Amendment rights.

Our initial inquiry is whether the Plaintiff suffered from an objectively serious medical need, and whether the Federal Defendants knew about that need, but deliberately disregarded it.  See, Jolly v. Knudson, supra at 1096.  In support of his claim, that he was wrongfully denied an electric wheelchair for the first four (4) years of his incarceration at FMC-Rochester, the Plaintiff claims that he began requesting an electric wheelchair in 2001, but was told that "no el[e]ctric wheelchairs were allowed on the compound." Complaint, supra at p. 4, ¶16.  When other inmates began arriving at FMC-Rochester, who were allowed to retain electric wheelchairs, the Plaintiff renewed his request that he be allowed to use his personal electric wheelchair, or be issued one by the BOP.  Id. at p. 5, ¶¶17-18.  The physical therapy department at FMC-Rochester denied the Plaintiff's requests for an electric wheelchair, id. at ¶23, and the Plaintiff claims that he was told that his weight and size

prevented him from receiving such an accommodation.  Id. at ¶25.  The Plaintiff received an electric wheelchair in July of 2005.  Id. at ¶26.

On this Record, we find no evidence that the Federal Defendants deliberately disregarded the Plaintiff's genuine medical needs.  On each occasion that the Plaintiff complained about his need for an electric wheelchair, the Federal Defendants responded with an evaluation, or treatment.  The Plaintiff admits that, when he was originally detained at FMC-Rochester, no inmates were allowed to have electric wheelchairs.  After inmates began to be admitted, who utilized electric wheelchairs, the Federal Defendants responded to the Plaintiff's renewed requests for such an accommodation, by sending him to "Rehab Services," where x-rays of his wrists and shoulders resulted in no significant findings.  See, Appendix, Exhibit A-2.  The Physical Therapy department then assessed the Plaintiff's needs, and recommended that the Plaintiff undertake activities-of-daily-living modifications, bracing, upper body strengthening exercises, and a weight loss program.

The Plaintiff was also seen by Occupational Therapy, which found no evidence of carpal tunnel syndrome, or an ulnar nerve compression in his wrists, and recommended proper positioning of the Plaintiff's upper body when using his mechanical wheelchair.  Medical staff at FMC-Rochester recognized the validity of

the Plaintiff's complaints, regarding pain and tingling in his wrists, but believed that there were alternatives that should be tried before they issued an electric wheelchair. In April of 2005, the National Office responded to the Plaintiff's administrative appeal, and encouraged the Plaintiff to discuss his discomfort with the Chief of the Physical Therapy program, as his recommendation, coupled with the Utilization Review Committee's decision, would determine if an electric wheelchair should be issued.  Id. at Exhibit C-1.  After such an evaluation, the Plaintiff was provided with an electric wheelchair.

Although "the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances," Shakka v. Smith, 71  F.3d 162, 167 (4th Cir. 1995), citing Weeks v. Chaboudy, 984 F.2d 185, 187-88 (6th Cir. 1993); Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980), the actions alleged by the Plaintiff do not rise to the level of cruel and unusual punishment, as determined by Courts in this Circuit.  In Cummings v. Roberts, supra at 1068, our Court of Appeals found that a prisoner had pled sufficient facts to state a claim for an Eighth Amendment violation, when he alleged that prison officials had deliberately denied him use of his wheelchair, forcing him to crawl on the floor of his cell.  Cf., Guiddy v. Terhune, 90 Fed.Appx. 592, 600 (3d Cir. 2004)(Prisoner's

allegation that correctional officer maliciously seized his wheelchair without instructions from a doctor for the purpose of causing unnecessary pain was sufficient to state a claim of deliberate indifference to serious medical needs under the Eighth Amendment); Weeks v. Chaboudy, supra at 187 (violation of Eighth Amendment to deprive paraplegic inmate wheelchair with knowledge that he could not move without one).[11]   In contrast, mere negligence does not constitute a violation of the Eighth Amendment.   See, Farmer v. Brennan, 511 U.S. 825, 834 (1994); Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Madison-Bey v. Correctional Medical Services, 180 Fed.Appx. 608 at *1 (8th Cir. 2006).  Here, however, the Plaintiff was not compelled, by any circumstance, to travel without a wheelchair; he simply wanted one that operated electrically and, until the decision to allow an electric wheelchair was made, there is no showing that travel by wheelchair deprived the Plaintiff of his freedom of movement.

---

[11]To the extent that the Plaintiff alleges that the Federal Defendants failed to provide him with an assistant to facilitate the use of his mechanical wheelchair, he has failed to plead any facts which show that he was unable to navigate the grounds of FMC-Rochester without one. Cf., Moore v. Curtis, 68 Fed.Appx. 561, 562-63 (6th Cir. 2003)(no violation of Eighth Amendment to deny wheelchair-bound prisoner use of assistant when no showing that he was denied any basic human need).

In addition, the Plaintiff alleges that he was deliberately denied prescribed pain medications, and that the Federal Defendants ignored "legal written prescriptions for pain management," and acted with "careless disregard, [malevolent] and evil indifference" to the Plaintiff's suffering.  Specifically, the Plaintiff claims that the FMC-Rochester pharmacy failed to dispense s/r morphine to him on four (4) occasions:  July 6, 2005; July 7, 2005; July 8, 2005; and July 15, 2005.

"[I]ntentionally interfering with * * * treatment once prescribed" is a violation of the Eight Amendment, Estelle v. Gamble, supra at 104-05, and "[p]rison officials cannot substitute their judgment for a medical professional's opinion."  Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002), citing Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  However, "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment."  Dulany v. Carnahan, supra at 1240.  In Johnson v. Hay, 931 F.2d 456, 461 (8th Cir. 1991), our Court of Appeals found that a prisoner had stated a claim for cruel and unusual punishment when he suffered two convulsions after a prison pharmacist deliberately refused to fill legitimate prescriptions, that had been written by prison physicians for anti-seizure medications, based upon the pharmacist's belief that the prisoner did not suffer from a seizure disorder.  See also,

<u>Easter v. Powell</u>, 467 F.3d 459, 463-64 (5th Cir. 2006)(deliberate indifference manifested by nurse who sent prisoner with heart problems to pharmacy and refused to provide him with cardiac medications when he found the pharmacy closed); <u>Meloy v. Schuetzle</u>, 230 F.3d 1363 at *1 (8th Cir. 2000)(Table Decision)(prisoner stated claim for violation of Eighth Amendment when prison officials denied him access to a physician-prescribed breathing apparatus).

In contrast, the Court in <u>Givens v. Jones</u>, 900 F.2d 1229, 1233 (8th Cir. 1990), granted Judgment for prison officials in an action alleging a one-month delay in the treatment for a leg injury, finding no deliberate indifference where a prisoner suffered negative side effects from a prescribed medication, when his physician did not believe he had an allergy to that medication, or when the prison officials denied the prisoner access to medical care for leg pain, since there was no showing that the prisoner's condition was acute. Cf., <u>Mathison v. Swenson</u>, 143 Fed.Appx. 730, 733 (8th Cir. 2005)(no evidence of deliberate indifference when prison officials administered prescribed drugs in crushed form); <u>Jolly v. Badgett</u>, 144 F.3d 573, 573 (8th Cir. 1998) (Summary Judgment granted when prisoner failed to show prison officials were aware that delay in administering medications could result in physical harm).

The Chief of the Pharmacy Department at FMC-Rochester, James Halvorsen ("Halvorsen"), has averred that, during the time period in question, prison staff, including Herold, had a physician's prescription on file that authorized them to dispense s/r morphine to the Plaintiff twice daily.  See, <u>Declaration of Halvorsen,</u> <u>Docket No. 29,</u> at p. 1, ¶1.  The Plaintiff was also authorized to receive doses of i/r (i.e., immediate acting) morphine three (3) times daily to control break-through pain prior to July 6, 2005, but that prescription expired on July 6, 2005, and was not renewed by the Plaintiff's treating physician until July 8, 2005.  <u>Id.</u>, at p. 2, ¶7. Nurses at FMC-Rochester are not authorized to administer i/r morphine without a prescription from a physician, and therefore, on July 6, and 7, 2005, as is uncontested by the Plaintiff, he received his regular dose of s/r morphine, but not the supplemental daily dose of i/r morphine.  <u>Id.</u> at ¶8.[12]  On July 8, 2005, a physician did write a new prescription that allowed the Plaintiff to receive a daily dose of i/r morphine, and the Federal Defendants argue that he received i/r morphine as ordered on that day, as well as his regular dose of s/r morphine.  <u>Id.</u> at ¶7.  As a result, even viewing the facts in

_____

[12]In his <u>Complaint</u>, the Plaintiff appears to confuse the two (2) types of morphine, claiming that he was denied s/r morphine, but was allowed continued access to i/r morphine. See, <u>Complaint</u> at pp. 8-9, ¶¶48-54. The distinction does not affect our analysis, as the Plaintiff does not deny that he received some form of pain medication throughout the period in question.

a light most favorable to the Plaintiff, it is undisputed that FMC-Rochester staff dispensed prescribed pain medications to him through the period in question and, on this Record, we find no manifestation of deliberate indifference that is sufficient to state a claim for an Eighth Amendment violation.

Likewise, the Federal Defendants allege that, on July 14, 2005, the Plaintiff was observed holding his authorized dose of three (3) tabs of s/r morphine under his tongue, rather than consuming it as prescribed. Id. at ¶9. The primary care physician was contacted, and he recommended that the Plaintiff's prescription be switched to methadone, as it could be crushed and dissolved in water, prior to administration, so as to allow the medication to be immediately consumed. Id. at ¶10. Therefore, the FMC-Rochester pharmacists did not arbitrarily change the Plaintiff's medication on July 15, 2005, but responded to the Plaintiff's non-compliance with his prescribed drug regimen, by contacting the primary physician, who recommended a suitable alternative drug that reduced the potential of abuse of the drug, or of sale to other inmates. Id. at ¶11. After our thorough review, we find nothing in the record to demonstrate that the Plaintiff was denied medical treatment on any of the occasions alleged, and we recommend that his Eighth Amendment claims be dismissed.

[c]   The Equal Protection Claim.   As does the Fourteenth Amendment, the Equal Protection component of the Fifth Amendment requires that the government treat similarly situated individuals alike.  See, <u>Rouse v. Benson</u>, 193 F.3d 936, 942 (8th Cir. 2004), citing <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).  In order to sufficiently state an Equal Protection claim, a prisoner must show that he is somehow being treated differently than a similarly situated class of inmates, that the different treatment impinges on one of his fundamental rights, and that the different treatment  bears no rational relation to any legitimate penal interest.  See, <u>Murphy v. Missouri Dept. of Corrections</u>, 372 F.3d 979, 984 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004), citing <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998)[en banc].

Although the Plaintiff does not specifically plead a violation of the Fifth Amendment in his Complaint, in his administrative remedy requests, the Plaintiff alleges that "a pattern of Bias, discrimination and prejudice" was employed to determine which prisoners received electric wheelchairs, with only White inmates receiving those accommodations, despite having lesser physical needs than the Plaintiff.  See, <u>Appendix</u>, supra at Exhibit A-1. B-1.  However, the Plaintiff has failed to adduce any evidence which shows that he was treated disparately from other

prisoners -- in particular, from non-Black prisoners.  In his response to the Plaintiff's initial grievance, filed on December 2, 2004, see, <u>Appendix</u>, supra at Exhibit A-1, LeBlanc explained that "[r]ace never has been, nor ever will be, an issue in providing appropriate medical care [at FMC-Rochester], at any [BOP] facility * * * [but] [a]t this time, an electric wheelchair is not medically necessary in your case." <u>Id.</u> at Exhibit A-2.

Although the Plaintiff repeated his claim of racial motivation for the denial of an electric wheelchair in grievances filed on January 12, 2005, <u>id.</u> at Exhibit B-1, and February 23, 2005, <u>id.</u> at Exhibit C-1, he appears to have abandoned that claim by September 9, 2005, when he filed a final grievance alleging only denial of medical treatment.  <u>Id.</u> at Exhibit D-1.  In considering a Motion to Dismiss, "the Court need not consider conclusory allegations or blindly accept the legal conclusions drawn by the plaintiff." <u>Hastings v. Wilson</u>, 2007 WL 333617 at *2 (D. Minn., February 1, 2007), citing <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990); <u>Quinn v. Ocwin Federal Bank FSB</u>, 470 F.3d 1240, 1244 (8th Cir. 2006); <u>Hanten v. Sch. Dist. of Riverview Gardens</u>, 183 F.3d 779, 805 (8th Cir. 1999).  Here, the Plaintiff has failed to plead any facts that would state a claim for discrimination based on his race, and the claims he made in the course of his administrative appeals -- that other inmates,

who were not Black, were receiving electric wheelchairs after his request was denied -- were entirely unsupported by any factual showing, and do not establish any grounds for allowing his Fifth Amendment claim to proceed.

          3)    <u>Qualified Immunity</u>.  Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  See, <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001).  As with all Motions to Dismiss, one predicated on qualified immunity requires that we "view[] the allegations in the complaint in the light most favorable to the plaintiff." <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).

    "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, supra at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say

that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

Here, while we have concluded that the Defendants' treatment of the Plaintiff did not violate the Constitution, even if they had, the Defendants are clearly entitled to qualified immunity, as the unlawfulness of that treatment was far from apparent. See, Logan v. Clarke, 119 F.3d, 647, 649-650 (8th Cir. 1997); Camberos v. Branstad, 73 F.3d 174, 177 (8th Cir. 1995); Long v. Nix, supra at 765. Accordingly, the Defendants' Motion to Dismiss should also be granted under the doctrine of qualified immunity.

        b.      The Plaintiff's FTCA Cause of Action. The Federal Defendants assert that they are entitled to a dismissal of the Plaintiff's FTCA claims, because the Plaintiff failed to exhaust his administrative remedies, and the doctrine of sovereign immunity bars the Plaintiff's claims.

- 39 -

1)    <u>Failure to Exhaust Administrative Remedies</u>.  To bring a claim under the FTCA, a party must fully comply with all of the conditions and requirements prescribed by the Act.  See, <u>Bellecourt v. United States</u>, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994).   One of the primary requirements of the FTCA is found in the first sentence of Title 28 U.S.C. §2675(a), which states as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

<u>Title 28 U.S.C. §2675(a)</u>.

As the statutory language makes clear, a party cannot bring a lawsuit under the FTCA, without first exhausting his or her administrative remedies by presenting a written claim for relief to "the appropriate Federal agency."  See, <u>Duncan v. Department of Labor</u>, 313 F.3d 445, 447 (8th Cir. 2002)("Although the Federal Tort Claims Act creates several exceptions to the United States' sovereign immunity, it requires the claimant to first 'present[] the claim to the appropriate Federal agency.'"), quoting <u>Title U.S.C. §2675(a)</u>; see also, <u>McCoy v. United States</u>, 264 F.3d 792, 794 (8th Cir.

2001)("An action may not be commenced in federal court under the FTCA unless the plaintiff has first presented his claim to the appropriate federal agency, and that claim has been denied."), cert. denied, 535 U.S. 1053 (2002).

In addition, an FTCA claimant must file his or her administrative claim within two (2) years after the claim accrued.  See, McCoy v. United States, supra at 794 ("'[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.'"), quoting Title 28 U.S.C. §2401(b); see also, Garza v. United States Bureau of Prisons, 284 F.3d 930, 934 (8th Cir. 2002)("Under the FTCA, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues or it is time barred.").  Furthermore, "[a] plaintiff's compliance with the two-year limitations period is a jurisdictional prerequisite, since FTCA acts as a waiver of the federal government's sovereign immunity." McCoy v. United States, supra at 794.

Therefore, if an FTCA claimant does not file an administrative claim for relief within two (2) years after the claim accrues, any subsequent FTCA lawsuit, which is based on that claim, must be dismissed for lack of subject matter jurisdiction.  Finally, Section 2401(b) stipulates that a tort claim shall be barred "unless action is begun

within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  <u>United States v. Kubrick</u>, 444 U.S. 111, 117 (1979); <u>Slaaten v. United States</u>, 990 F.2d 1038, 1041 (8th Cir. 1993); <u>Sterling v. United States</u>, 985 F.2d 411, 412 (8th Cir. 1993).

Here, the Plaintiff has attached copies of "Standard Form 95" -- "Claim For Damage, Injury, or Death" -- to his Complaint, which suggests that he filed FTCA claims that would have satisfied the requirements of Section 2675(a) as the claims relate to his three fractured legs.[13]  See, <u>Appendix</u>, supra at Exhibits E-2, G-2, and I-2. Giving the Plaintiff's Complaint the benefit of a liberal construction, we find that the Plaintiff did attempt to satisfy the FTCA's administrative claim requirement. However, the Plaintiff failed to file his lawsuit within six (6) months after the denials of those claims, as the denial letters were sent to the Plaintiff. by certified mail, on September 17, 2005.  See, <u>Appendix</u>, supra at Exhibit E-1, G-1, I-1; <u>Schmidt v. United States</u>, 994 F.2d 843, 843 (8th Cir. 1993)(Table Decision)(affirming dismissal when complaint was filed more than six (6) months after mailing of agency decision by

_____

[13]Standard Form 95 is the prescribed form for presenting FTCA claims.  See, <u>28 C.F.R. §14.2(a)</u> ("For purposes of the provisions of [Title] 28 U.S.C. §§2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident * * *.").

certified mail); <u>Arigo v. United States</u>, 980 F.2d 1159, 1160 (8th Cir. 1992)(mailing of decision triggers start of six (6) month period).

The denial letters included language, based upon the statutory requirements, instructing the Plaintiff that, if he disagreed with the action, he could file suit "in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification." <u>Id.</u> The Plaintiff filed his lawsuit on April 7, 2006, which is almost one (1) month after the expiration of the statutory deadline. See, <u>Docket No. 1</u>.  Because compliance with Section 2401(b) is a jurisdictional prerequisite to suit, under the FTCA, see, <u>Osborn v. United States</u>, 918 F.2d 724, 728-31 (8th Cir. 1990); <u>Radman v. United States</u>, 752 F.2d 343, 344 (8th Cir. 1985); see also, <u>Logan v. United States</u>, 792 F. Supp. 663, 665-666 (E.D. Mo.), aff'd, 978 F.2d 1263 (8th Cir. 1992), we lack subject matter jurisdiction over the Plaintiff's FTCA claims which relate to his three (3) leg fractures.

The Plaintiff has included no documentation that would suggest that he ever attempted to exhaust his claims for the alleged mistreatment by LeBlanc for denying his requests for an electric wheelchair until 2005, or for his claims under the ADA, ABA, and UFAS, which relate to the physical layout of FMC-Rochester, and we find

that, to the extent the Plaintiff alleges those claims under the FTCA, they should also be dismissed, without prejudice, for failure to exhaust administrative remedies.

Finally, the Plaintiff has submitted a copy of his FTCA claim that was based on the failure of the Defendants to dispense s/r morphine on several occasions in July of 2005, which was denied by letter dated November 30, 2005. See, <u>Declaration of Dennis Bitz</u>, <u>Docket No. 26-5</u>, Exhibit 4. Since that claim was denied less than six (6) months prior to the filing of the Complaint on April 7, 2006, we find the evidence, that his claim was received, is sufficient to satisfy the test for exhaustion on that claim, which should not be barred as untimely.[14]

---

[14]As a corollary to their argument, that the Plaintiff has failed to exhaust his claims, the Defendants contend that, by requesting relief for "actual damages to be determined at a later date," and for compensatory damages "in excess of $75,000.00" in his Complaint, the Plaintiff failed to name a "sum certain" for the damages allegedly caused by the purported denial of pain medication, in violation of Title 28 U.S.C. §2675. See also, <u>28 C.F.R. §14.2(a)</u>; <u>Bellecourt v. United States</u>, supra at 430. However, in his original FTCA claim, the Plaintiff requested "$20,000.00 per day actual for each of wrong [and] $500,000.00 punitive damages for all compensatory, emotional distress," totaling $620,000.00. See, <u>Appendix</u>, supra at Exhibit K-2. "The purpose of the sum certain requirement is to facilitate settlement * * * and to inform the agency whether the claim is for more than 25,000 and the approval of the Attorney General is needed to settle a claim under 28 U.S.C. §2672." <u>Lundgren v. United States</u>, 810 F. Supp. 256, 257-58 (D. Minn. 1992)(citations omitted); <u>Melo v. United States</u>, 505 F.2d 1026, 1029 (8th Cir. 1974). As long as some sum is stated, Courts in our Circuit will permit an otherwise properly filed FTCA claim to go forward. See, <u>Val-U Const. Co. of South Dakota, Inc. v. United States</u>, 905 F. Supp. 728, 738 (D.S.D. 1995)("Those courts which have reached the issue of how precisely stated a

2)    <u>Sovereign Immunity</u>.  As the Defendants have correctly noted, only the United States itself, and not FMC-Rochester, or the BOP, can be sued under the FTCA.  See, <u>Duncan v. Department of Labor</u>, supra at 447 ("Because a Federal agency cannot be sued under the Federal Tort Claims Act, the United States is the proper defendant."), citing <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 476-77 (1994).  However, this action should not be dismissed because of the Plaintiff's failure to name the United States as a Defendant for, if that were the only flaw in the Plaintiff's case, we would be inclined to construe the action as having been brought against the United States.  See, <u>Title 28 U.S.C. §2679(d)</u>.

The FTCA is a specific statutory waiver of the Federal Government's sovereign immunity. See, <u>Primeaux v. United States</u>, 181 F.3d 876, 878 (8ᵗʰ Cir. 1999)("The FTCA is a limited waiver of the federal government's sovereign immunity."), cert. denied, 528 U.S. 1154 (2000).  Under the FTCA, a party can maintain an action against the United States, in Federal Court, for money damages arising from "injury or loss of property, or personal injury or death caused by the negligent or wrongful act

---

sum certain must be have almost uniformly permitted a claim, albeit in amended form, when some figure has been stated.").  As a result, even though the FTCA does not allow punitive damages, see <u>Title 28 U.S.C. §2674</u>, the Plaintiff has named a sum certain for actual damages, and that claim has been exhausted.

or omission of any employee of the Government while acting within the scope of his office or employment * * *." Title 28 U.S.C. §1346(b). "The government is not liable, however, for '[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" Tracor/MBA, Inc. v. United States, 933 F.2d 663, 665 (8th Cir. 1991). As a result, the Plaintiff's FTCA claims against the Federal Defendants, in their individual and official capacities, should be dismissed, with prejudice, and the United States should be substituted as the sole Defendant.

        3)      The Negligence Claim. To be actionable under the FTCA, "a claim must allege, inter alia, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" FDIC v. Meyer, supra at 477-78. The "law of the place" means the law of the place where the action is alleged to have occurred. See, Title 28 U.S.C. §1346(b); see also, United States v. Olson, 46 U.S. 43, 43 (2005); F.D.I.C. v. Meyer, supra at 478 ("[W]e have consistently held that §1346(b)'s reference to the 'law of the place' means law of the State--the source of substantive liability under the FTCA.") (citing cases); Laframboise v. Leavitt, 439 F.3d 792, 793 (8th Cir. 2006); Phillips v.

United States, 422 F.3d 709, 710 (8th Cir. 2005).   In Minnesota, to prevail on a

negligence claim, a plaintiff must prove: 1) that the defendant had a legal duty to the

plaintiff to take some action; 2) breach of that duty; 3) that the breach of that duty was

the proximate cause of plaintiff's harm; and 4) injury.  See, Gylten v. Swalboski, 246

F.3d 1139, 1141 (8th Cir. 2000), citing Gilbertson v. Leininger, 599 N.W.2d 127, 130

(Minn. 1999); Funchess v. Cecil Newman Corp., 632 N.W.2d 666, 672 (Minn. 2001).

Construing the Complaint liberally, we understand the Plaintiff to allege that

the Defendants had a duty to dispense lawfully issued prescriptions, that they

breached that duty by denying him those medications on four (4) separate occasions,

and that, as a result of that action, he endured "extreme pain and suffering."

Complaint, supra at p. 15, ¶¶92-93.  The Defendants deny any negligence, and have

submitted the statement of Halvorsen, who avers that the Plaintiff's prescription for

i/r morphine expired on July 6, 2005, and was not renewed until July 8, 2005.  See,

Declaration of Halvorsen, supra at p. 2, ¶7.   Halvorsen further attests that the

pharmacy staff dispensed methadone, rather than morphine, on July 15, 2005, based

on legitimate fears that the Plaintiff was secreting his prescribed medications, and that

this decision was accompanied by a new prescription by an attending physician.  See,

id. at ¶¶9-11.  In contrast, in his Complaint, the Plaintiff alleges that the staff at the

FMC-Rochester pharmacy "suddenly and unexpectedly refused to dispense s/r morphine" to him and, on July 15, 2005, required him to take methadone, while informing him that he would not be issued s/r morphine even with a valid prescription. See, Complaint, supra at pp. 8-9, ¶¶50-54.

Although this is a closer question, we find that the Plaintiff's Complaint fails to state a claim for negligence owing to the asserted denial of medications to which he felt that he was entitled.  It is undisputed that the pharmacy staff, who are employed at FMC-Rochester, are not allowed to dispense narcotics without a valid order from a physician, and the Record does not contest the averments of Halverson, and Herold, as to the status, during the time in question, of the Plaintiff's prescriptions.  Moreover, the period in which the medications were alleged to have been denied is so brief as to preclude any contention that the Plaintiff suffered a compensable personal injury.  Notably, the Plaintiff was not denied medication during that period, simply medication of his choice.  Since the switch to methadone was prescribed by a treating physician, and was not a judgment call made by the prison's pharmacists, and was in response to concerns over prison security, we are not well positioned to second-guess that brief change in the Plaintiff's prescriptive medicines.

Lastly, under Minnesota law, for a negligence claim against pharmacists to be actionable, the plaintiff must proffer expert opinion evidence, in conjunction with his or her Complaint, attesting to the Defendants' departure from the standard of care, which led to the Plaintiff's injury.[15]  Here, no such expert opinion evidence has been proffered by the Plaintiff, notwithstanding many months of forewarning that such an affidavit was essential to the legal vitality of his claim.  See, Memorandum of Law in Support of Motion to Dismiss, at pp. 46-48.  Accordingly, we recommend that the

------

[15]Minnesota Statutes Section 145.682, Subdivision 1, defines a "health care provider," whose asserted medical negligence requires an expert opinion affidavit, as follows:

> For purposes of this section, "health care provider" means a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care as defined in section 145.61, subdivision 2 or 4, or a certified health care professional employed by or providing services as an independent contractor in a hospital.

In turn, Minnesota Statutes Section 145.61, Subdivision 2, provides as follows:

> "Professional" means a person licensed or registered to practice a healing art under chapter 147 or 148, to practice dentistry under chapter 150A, to practice as a **pharmacis**t under chapter 151, or to practice podiatry under chapter 153.

[Emphasis added].

Defendants' Motion to Dismiss the alleged negligence claim, under the FTCA, also be granted.

      c.    <u>The Plaintiff's ADA, ABA, and UFAS Claims</u>.  In Count Five of his Complaint, the Plaintiff alleges that he has been discriminated against by the BOP, Anderson, and the Doe Defendants, due to his disabilities as a "handicapped, chronic pain and wheelchair bound inmate," and he seeks relief in the form of actual, punitive, compensatory, and consequential damages, under the ADA, the ABA, and the UFAS. <u>Complaint</u>, supra at pp. 15-17, ¶¶96-112.  The Defendants respond that the Plaintiff has failed to exhaust his administrative remedies relating to this claim.  The Plaintiff contests that assertion and, although he has not submitted a copy of the grievance he allegedly filed, he included a Response to a Request for Administrative Remedy from Anderson, which addresses a request for construction of a new recreation track, and ramp, to the upper recreation area at FMC-Rochester.  See, <u>Appendix</u>, supra at Exhibit P.  Anderson has attested that the grievance in question was actually filed by another inmate, Rolando Araujo ("Araujo"), and the reply included by the Plaintiff was, in fact, directed to Araujo's complaint.  See, <u>Declaration of Anderson</u>, supra at p. pp. 4-5, ¶¶21-22.

Even if the administrative request had been filed by the Plaintiff, we would still find that this claim has not been exhausted, as the Plaintiff only alleges that it was grieved to Anderson, but he makes no showing of any appeals to the Regional or the National Offices of the BOP.  In <u>Randolph v. Rogers</u>, 253 F.3d 342, 348 n.11 (8th Cir. 2001), our Court of Appeals declined to consider, as waived on appeal, the State defendants' claim that the PLRA required exhaustion for claims brought under the ADA.  However, other Circuits, which have considered whether the PLRA requires that a prisoner first exhaust his administrative remedies before filing a claim under the ADA, have found that the exhaustion requirement applies.

For example, the Court of Appeals for the Ninth Circuit cited the language of Section 1997e(a), which provides that "[n]o action shall be brought **with respect to prison conditions** under * * * [42 U.S.C. §1983], **or any other federal law**, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted."  <u>Smith v. Haan</u>, 199 Fed.Appx. 594, 595 (9th Cir. 2006)[emphasis in original], citing <u>Porter v. Nussle</u>, supra at 532 ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); cf., <u>Wiley v. McKellar</u>, 167 Fed.Appx.

- 51 -

385, 386 (5th Cir. 2006); see, <u>Jones v. Smith</u>, 266 F.3d 399, 400 (6th Cir. 2001)

(dismissing prisoner's ADA claim for failure to exhaust administrative remedies); cf.,

<u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005)(prisoner's ADA complaint

could go forward when he had exhausted his claims).[16]

   Although the Plaintiff also invokes the ABA and the UFAS, both provide for

purely administrative remedies, and do not allow recovery for money damages as

claimed by the Plaintiff.  The ABA was enacted "to insure whenever possible that

physically handicapped persons will have ready access to, and use of, [public]

buildings." <u>Title 42 U.S.C. §4152</u>.  It contains no waiver of sovereign immunity, nor

does it provide for a private cause of action.  <u>Id.</u>; see also, <u>Crowder v. True</u>, 1998 WL

42318 at *2 (N.D. Ill., January 29, 1998)("There is no private right of action by

handicapped individuals complaining of a violation of the ABA; enforcement is

purely administrative.").

_____

   [16]Even if the Plaintiff had exhausted his ADA claims, a Court in this district has
previously held that "the ADA does not provide a cause of action against the federal
government," because there is no explicit waiver of sovereign immunity contained in
the Statute. <u>County of St. Louis v. Thomas</u>, 967 F. Supp. 370, 376 (D. Minn. 1997),
citing <u>Title 42 U.S.C. §12131(1)(A)-(B)</u> (defining public entities covered by the ADA
as any State or local government); see also, <u>Fulton v. United States</u>, 198 Fed.Appx.
210, 215 (3d Cir. 2006); <u>Agee v. United States</u>, 72 Fed. Cl. 284, 289 (Fed. Cl. 2006).

Similarly, the UFAS is an administrative provision that "prescribes standards for the design, construction, lease, and alteration of buildings to ensure, whenever possible that physically handicapped persons will have ready access to and use of such buildings." 41 C.F.R. Ch. 101-19.600, et seq. In short, the UFAS does not state a cause of action separate from the ADA or the ABA. See, DeFrees v. West, 988 F. Supp. 1390, 1393 (D. Kan. 1997). Thus, we recommend that the Plaintiff's claims under the ADA, ABA, and UFAS be dismissed.

        d.    The Plaintiff's Tucker Act Claim.   In Count Three of his Complaint, the Plaintiff alleges a cause of action, under the Tucker Act, against the BOP, the Doe Defendants, and the Mayo Clinic. According to the Plaintiff, he suffered pain, delayed healing, and emotional distress, when physicians from the Mayo Clinic, as an independent contractor with the United States, negligently treated his broken leg. In addition to the Federal Defendants, the Mayo Clinic has filed a separate Motion to Dismiss, arguing that the Plaintiff has failed to state a claim under the Tucker Act, since he has alleged damages in excess of the statutory limit, and

because we have no jurisdiction to consider Tucker Act claims by parties who are not in privity of contract with the United States.[17]

In Count Three, the Plaintiff asks for $75,000.00 in actual, punitive, compensatory, and consequential damages, as a result of the Mayo Clinic's alleged breach of contract in treating his leg fracture.  The Tucker Act, <u>Title 28 U.S.C. §1491</u>, vests the Court of Federal Claims with exclusive jurisdiction over certain contract claims against the United States, that are in excess of $10,000.00.[18]  While we have

_____

[17]In Paragraph 88 of his Complaint, the Plaintiff alleges as follows:

> Plaintiff is not neccessarily [sic] alleging any medical "malpractice" but rather a contractor liability under the Tucker Act (Plaintiff may seek leave to amend a malpractice claim (later).

To date, the Plaintiff has not asserted a malpractice claim against the Mayo Clinic and, as the Mayo Clinic correctly notes, the Plaintiff's filings are devoid of the expert affidavits which, under Minnesota law, must accompany a malpractice action, attesting to a medical expert's opinion that the Mayo Clinic "deviated from the applicable standard of care and by that action caused injury to the plaintiff." <u>Minnesota Statutes Section 145.682, Subdivisions 2 and 3</u>.  The same provision of expert opinion affidavits apply to actions commenced by <u>pro se</u> plaintiffs.  See, <u>Minnesota Statutes Section 145.682, Subdivision 5</u>.

[18]In relevant part, Section 1491 provides as follows:

> (a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

the authority to transfer the Plaintiff's claims, under Title 28 U.S.C. §1631, we find

that the Plaintiff has no likelihood of prevailing on a Tucker Act claim, and therefore,

we recommend that those claims be dismissed, while noting that the Plaintiff is free

to refile that claim with Court of Federal Claims.  See, <u>Mullally v. United States</u>, 95

F.3d 12, 14 (8th Cir. 1996); <u>St. Louis Union Trust Co. v. Stone</u>, 570 F.2d 833, 836 (8th

Cir. 1978); <u>Thompson v. United States</u>, 408 F.2d 1075, 1081 (8th Cir. 1969); <u>United</u>

<u>States v. House</u>, 100 F. Supp. 2d 967, 978 n.7 (D. Minn. 2000); <u>Winston Bros. Co. v.</u>

<u>United States</u>, 371 F. Supp. 130, 133 (D. Minn. 1973).

      In addition, the Little Tucker Act, <u>Title 28 U.S.C. §1346(a)(1)</u>, confers

concurrent jurisdiction upon the United States District Courts over contract claims

against the United States, but only where the Plaintiff alleges damages of $10,000.00

--------

department, or upon any express or implied contract with
the United States, or for liquidated or unliquidated damages
in cases not sounding in tort.

                    *       *       *

(b)    The Court of Federal Claims shall have jurisdiction
to render judgment upon any claim by or against, or dispute
with, a contractor arising under section 10(a)(1) of the
Contract Disputes Act of 1978 * * *.

or less.[19]  See, <u>Taylor v. United States</u>, 248 F.3d 736, 737 (8th Cir. 2001); <u>Polos v. United States</u>, 556 F.2d 903, 905 (8th Cir. 1997); <u>Mullally v. United States</u>, 95 F.3d 12, 14 (8th Cir. 1996); <u>St. Louis Trust Co. v. Stone</u>, 570 F.2d 833, 836 (8th Cir. 1978); <u>United States v. House</u>, 100 F. Supp. 2d 967, 978 (D. Minn. 2000).  Even if we found that the Plaintiff had waived his damages in excess of $10,000.00, see, e.g., <u>United States v. Johnson</u>, 153 F.2d 846, 848 (9th Cir. 1946), the Plaintiff has still failed to state an actionable claim under the Little Tucker Act, for the Plaintiff admits that he does not have a contractual relationship with the United States.  Instead, he alleges that he is entitled to recover damages for the Mayo Clinic's breach of contract with the United States by providing negligent medical treatment.

---

[19]In relevant part, Section 1346 provides:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (a)(2) any * * * civil action or claim against the United States, not exceeding $10,000 in amount, founded upon either the Constitution, or any Act of Congress, * * * or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

"Federal common law recognizes the ability of third parties to sue on a contract [with the United States] that was intended for their benefit," as long as "the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance." 5th Bedford Pines Apartments, Ltd. v. Brandon, 262 F. Supp. 2d 1369, 1377-78 (N.D. Ga. 2003), citing Roberts v. Cameron-Brown Co., 556 F.2d 356, 362 (5th Cir.1977).  However, Little Tucker Act claims for breach of contract can only be made against the United States, not on its behalf.  See, Roedler v. Dept. of Energy, 255 F.3d 1347, 1351 (C.A. Fed. 2001)("Third party beneficiaries of a contract to which the United States is a party may assert a claim against the United States, in accordance with the law governing third party claims.").  Since the Plaintiff does not allege that the United States has breached its contract with the Mayo Clinic, see, Declaration of William R. Stoeri, Docket No. 16, Exhibit 1, he has failed to state a claim under the Little Tucker Act, and the Mayo Clinic's Motion to Dismiss should be granted.

In sum, we find that the Defendants' Motions to Dismiss should be granted in all respects.

NOW, THEREFORE, It is –

RECOMMENDED:

- 57 -

1.     That the Defendants BOP, Anderson, Herold, and the Doe Defendants'

Motion to Dismiss [Docket No. 23] be granted.

2.     That the Defendant Mayo Clinic's Motion to Dismiss [Docket No. 12]

be granted.

3.     That the Plaintiff's informal Motion for Appointment of Counsel [Docket

No. 32] be denied.


Dated:  February 20, 2007                    *s/Raymond L. Erickson*
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**March 9, 2007,** a writing which specifically identifies those portions of the Report to

which objections are made and the bases for those objections.  Failure to comply with

this procedure shall operate as a forfeiture of the objecting party's right to seek review

in the Court of Appeals.


- 58 -

If the consideration of the objections requires a review of a transcript of the Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 9, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.